**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**RANDALL G. CRUMP**

                              **Plaintiff,**

    vs.                                            7:06-CV-1003
                                                        (NAM/DRH)
**MICHAEL J. ASTRUE\*,**
**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

---

**APPEARANCES:**                                **OF COUNSEL:**

Conboy, McKay, Bachman & Kendall, LLP      Lawrence D. Hasseler, Esq.
407 Sherman Street
Watertown, New York 13601
*Attorneys for Plaintiff*

ANDREW T. BAXTER                         Vernon Norwood, Esq.
United States Attorney                           Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198
*Attorney for Defendant*

      \*\* On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d)(1), he is automatically substituted for former Commissioner Joanne B. Barnhart as the defendant in this action.

**Norman A. Mordue, Chief U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

      Plaintiff Randall Crump brings the above-captioned action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, seeking a review of the Commissioner of Social Security's decision to deny his application for disability benefits.

## II. BACKGROUND

On May 7, 2003, plaintiff protectively filed an application for Social Security Income ("SSI"). (T. 62)[1]. Plaintiff was 46 years old at the time of his application and alleged an inability to work due to pain in his back, shoulders, legs, feet and left elbow. (T. 68). Plaintiff completed the 12th grade and his past work consisted of employment as a janitor, construction worker, furniture mover, sheet rock worker and machine operator. (T. 17, 228).

On November 26, 2003, plaintiff's application was denied and plaintiff requested a hearing by an ALJ which was held on November 4, 2004. (T. 44; 225-58). On February 24, 2006, the ALJ issued a decision denying plaintiff's claim for disability benefits. (T. 16-28). The Appeals Council denied plaintiff's request for review on July 7, 2006, making the ALJ's decision the final determination of the Commissioner. (T. 5). This action followed.

## III. DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities." The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the

---

[1] "(T. )" refers to pages of the administrative transcript, Dkt. No. 3.

claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step. *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

On February 24, 2006, the ALJ issued a decision and found at step one that plaintiff has not engaged in substantial gainful activity since he protectively filed his application for benefits. (T. 18). At step two, the ALJ concluded that plaintiff suffered from degenerative disc disease at L4/5 and L5/S1 with radiculopathy which qualified as a "severe impairments" within the meaning of the Social Security Regulations (the "Regulations"). (T. 28). At the third step of the analysis, the ALJ determined that plaintiff's impairments did not meet or equal the severity of any impairment listed in Appendix 1 of the Regulations. (T. 28). The ALJ found that plaintiff had the residual functional capacity ("RFC") to "lift and carry up to 10 lbs. occasionally; sit for up to 6 hours and stand and/or walk for up to 2 hours during the course of an 8-hour workday, with restrictions in pushing/pulling with his lower extremities." (T. 28). Therefore, at step four, the ALJ concluded that plaintiff was unable to perform all of his past relevant work. (T. 28). Relying on the medical-vocational guidelines ("the grids") set forth in the Social Security Regulations, 20

C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that plaintiff has the exertional capacity to perform a significant range of sedentary work. (T. 28). Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act. (T. 28).

In seeking federal judicial review of the Commissioner's decision, plaintiff argues that: (1) plaintiff is disabled as plaintiff's back impairment meets the requirements of Listing § 1.04A; (2) the ALJ failed to follow the treating physician rule; (3) the RFC determination by the ALJ is not supported by substantial evidence; and (4) plaintiff presents non-exertional impairments which require the use of a vocational rehabilitation expert rather than reliance upon the grids and thus, the Commissioner did not sustain his burden of proof at the fifth step of the sequential evaluation process. (Dkt. No. 6).

**A.     Meet or Medically Equals a Listed Impairment - Listing § 1.04A**

A claimant is automatically entitled to benefits if his or her impairment(s) meets the criteria set forth in Appendix 1 to Subpart P of Part 404. *McKinney v. Astrue*, 2008 WL 312758, *4 (N.D.N.Y. 2008). The burden is on the plaintiff to present medical findings which show that his impairments match a listing or are equal in severity to a listed impairment. *Zwick v. Apfel*, 1998 WL 426800, at *6 (S.D.N.Y. 1998). In order to show that an impairment matches a listing, the claimant must show that his or her impairment meets all of the specified medical criteria. *Pratt v. Astrue*, 2008 WL 2594430, at *6 (N.D.N.Y. 2008) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (holding that if a claimant's impairment "manifests only some of those criteria, no matter how severely," such impairment does not qualify). In cases in which the disability claim is premised upon a listed impairment of Appendix 1, "the Secretary should set forth sufficient rationale in support of his decision to find or not to find a listed impairment." *Gorham*

*v. Astrue*, 2008 WL 4030650, at *4 (N.D.N.Y. 2008) (citing *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982)).

The requirements of disability for spine disorders listed in 20 C.F.R. Part 404, Subpt. P, App. 1, state:

> 1.04     Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A.     Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Horohoe v. Astrue*, 2009 WL 2156915, at * 9 (N.D.N.Y. 2009).  Conclusory findings that a claimant's impairments do not meet or medically equal listed impairments cannot be sustained. *Vasquez v. Barnhart*, 2004 WL 725322, at *6-7 (E.D.N.Y. 2004).

In his decision in this matter, the ALJ stated:

> In reaching this conclusion, it is noted that although the claimant has some diagnostic and clinical evidence of disc herniation with right-sided radiculopathy, the preponderance of evidence since the claimant protectively filed his application for benefits on May 7, 2003, does not demonstrate objective signs of a spine disorder that meets the threshold criteria of § 1.04 of the Listing of Impairments; i.e., his conditions have not resulted in compromise of a nerve root or the spinal cord characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy and/or muscle weakness) accompanied by sensory or reflex loss and positive straight-leg raising test sitting and supine. (T. 21).

Plaintiff alleges that the ALJ failed to perform a thorough review of Listing § 1.04 regarding disorders of the spine.  Plaintiff claims that he suffers from an impairment that meets

the level described in Listing § 1.04A and that the ALJ failed to explain why plaintiff's, "MR imaging and treating neurosurgeon's clinical notes were not found to be conclusive evidence of a listed impairment". Plaintiff contends that he is entitled to, "an automatic finding of disability without further review". (Dkt. No. 6, p. 9). The Commissioner argues that the ALJ's decision on the issue is supported by substantial evidence. (Dkt. No. 8, p. 12).

    **1.**    **Nerve Root Compression**

The first requirement to meet Listing § 1.04A is "evidence of nerve root compression characterized by neuro-anatomic distribution of pain". *Pitcher v. Barnhart*, 2009 WL 890671, at *11 (N.D.N.Y. 2009) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1). Plaintiff argues that the MRI films provide evidence of compression and further, plaintiff made constant complaints of pain to his treating physicians. (Dkt. No. 6, p. 10). Defendant does not respond to this contention.

On May 27, 2003, plaintiff was referred to Dr. Lesley Germain, an orthopedic surgeon.[2] Dr. Germain noted that plaintiff had nerve root tension and irritation and ordered an MRI of plaintiff's lumbar spine which was performed on June 30, 2003. (T. 151, 172). Dr. Germain referred plaintiff to Dr. Krawchenko who ordered a second MRI of plaintiff's lumbar spine which was performed on March 6, 2004. (T. 187).

In the decision, the ALJ acknowledged the results of the both MRI films and stated:

> an MRI of the lumbar spine was completed on June 30, 2003 and interpreted as showing a left paracentral disc herniation at L4/5 and L5/S1. L5/S1 was considered to be a bit more prominent than L4/5, with an MR myelogram demonstrating the effect of the disc herniations on the descending nerve roots of L5/S1 on the left. (T. 18).
>
> an MRI of the lumbar spine on March 6, 2004 . . . revealed a diffuse disc bulge at the L3-4 level with minimal thecal sac compression, and

---

[2] Plaintiff was referred by his chiropractor, Dr. Lisa Francey. (T. 171).

> a diffuse disc bulge at the L4-5 level with a large right paracentral disc extrusion producing compression of the thecal sac and right L5 nerve in the right lateral recess of L5. A diffuse disc bulge was also observed at the L5-S1 level with a mild size left paracentral disc protrusion producing minimal compression of the thecal sac and mild compression of the left S1 nerve. (T. 20).

The MRI films provide evidence that plaintiff suffered from nerve root compression. Indeed, defendant does not provide any argument suggesting that plaintiff did not suffer from such a condition. Further, in the decision, the ALJ acknowledged the existence of "some diagnostic and clinical evidence of disc herniation with right-sided radiculopathy".[3]

**2.  Neuro-Anatomic Distribution of Pain**

Plaintiff claims that he made constant complaints of pain to his treating physicians. (Dkt. No. 6, p. 10). Based upon the record, plaintiff continually complained of chronic back pain resulting in difficulties standing and walking with numbness, tingling and weakness down his right leg to his foot. *See Muntz v. Astrue*, 540 F.Supp.2d 411, 420 (W.D.N.Y. 2008) (evidence of neuro-anatomic pain found throughout the record where the plaintiff complained to treating and examining physicians of back pain with radiation of numbness and weakness). Plaintiff made these complaints to his treating physicians - Drs. Germain, Krawchenko, Ali and Locke. (T. 171, 173, 176, 178, 212, 224). Plaintiff described his pain as a "9 on a scale of 10". (T. 205). Indeed, in the decision, the ALJ acknowledged that plaintiff made these complaints of back pain with radiating pain and weakness to his physicians. (T. 18, 19, 20).

**3.  Limitation of Motion in the Spine**

---

[3] Radiculopathy is a disease of the nerve roots. *Dorland's Illustrated Medical Dictionary,* 1595 (31st ed. 2007).

Plaintiff argues that his limited range of motion was documented by his treating physicians. (Dkt. No. 6, p. 11). Defendant does not respond to this argument. On October 28, 2003, Dr. Krawchenko found that plaintiff, "could only extend his back 5 degrees and flex 10 degrees with pain in the right side of his back". (T. 176). In the decision, the ALJ acknowledged Dr. Krawchenko's findings. (T. 19). However, the ALJ also noted that the consulting physician, Dr. Amatucci, found that plaintiff exhibited "fairly good range of motion". (T. 25). In addition to the evidence cited by the ALJ, the record reveals that Dr. Germain found, during two separate visits, that plaintiff's "pain does limit ROM". (T. 172, 205). Further, on October 25, 2004, Dr. Ali noted that plaintiff, "show[ed] evidence of restrictions in flexion and extension" (T. 224). The ALJ failed to address the conclusions of Drs. German or Ali in this regard.

### 4. Motor Loss (Atrophy with Associated Muscle Weakness or Muscle Weakness, Accompanied by Sensory or Reflex Loss)

Plaintiff argues that his treating physicians and chiropractor found and documented that plaintiff suffered from muscle weakness or motor loss with sensory or reflex loss. (Dkt. No. 6, p. 11). Specifically, on May 27, 2003, Dr. Germain noted, "there is motor sensory defici [sic] of L5-S1 on the right". (T. 172). Defendant concedes that plaintiff demonstrated that he suffers from, "a herniated nucleus pulposes [sic]", but argues that plaintiff does not satisfy the remaining criteria of Listing § 1.04A as plaintiff failed to demonstrate motor loss accompanied by sensory or reflex loss. (Dkt. No. 8, p. 12). The Commissioner relies upon the opinions of Dr. Amatucci, the consultative examiner.

On July 24, 2003, Dr. Amatucci examined plaintiff and found plaintiff's muscle strength in the upper and lower bilateral extremities was full at 5/5 and plaintiff's reflexes and sensations were normal. (T. 153). Dr. Amatucci never performed any follow up examination of plaintiff.

Based upon the record and plaintiff's treatment records subsequent to his examination by Dr. Amatucci, the Court finds defendant's argument unpersuasive. After July 2003, plaintiff had a second MRI of his lumbar spine and continued to treat with Drs. Germain, Krawchenko, Ali and Locke. The record reveals that during these visits, plaintiff continually complained of numbness in his left leg and foot with weakness and tingling. (T. 176). On June 10, 2004, Dr. Krawchenko noted, "decreased pin and touch sensation in the right leg and foot". (T. 179). On December 9, 2004, Dr. Locke concurred with the neurological findings of Drs. Germain and Krawchenko. On April 28, 2005, Dr. Locke found that plaintiff had decreased sensation in his right foot, which was indicative of sciatica. (T. 208, 220). In the decision, the ALJ failed to address or acknowledge any of aforementioned conclusions by plaintiff's treating physicians.

Defendant also alleges that Dr. Francey's assessment that plaintiff's ability to lift and/or carry was not limited by his impairment contradicts plaintiff's claims of sensory or reflex loss. (Dkt. No. 8, p. 12). However, Listing § 1.04A does not require a plaintiff to be limited in his ability to lift/carry and therefore, the Court finds that this argument lacks merit.[4]

### 5. Positive Straight-Leg Raising (SLR) Tests

Plaintiff argues that medical examinations by his treating physicians demonstrate positive SLR tests. (Dkt. No. 6, p. 11). Defendant does not respond to this claim. The ALJ noted that Dr. Krawchenko found, "straight leg raising was positive on the right 80 degrees with increased back and right leg pain . . .[o]n the left at 90 degrees, the claimant had increased back pain but no left

---

[4] Defendant also claims that Dr. Ali opined that plaintiff's "physical examination was unremarkable". (Dkt. No. 8, p. 12). However, the Court has reviewed the record and the specific pages of the transcript cited by defendant and finds no report from Dr. Ali with that assessment. (T. 197,199). Further, pages 197 through 199 of the transcript consist of Dr. Ali's office notes for treatment rendered to plaintiff for conditions/complaints unrelated to his lower back.

leg pain". (T. 19). The ALJ also acknowledged Dr. Locke's observation of, "bilateral positive straight leg raising signs at 15 degrees". (T. 20, 210). In addition to the findings cited by the ALJ, the record also reveals that Dr. Ali found "positive straight leg raising on the right side". (T. 224). Moreover, the consulting physician, Dr. Amatucci, noted:

> EXAMINATION OF THE LUMBOSACRAL SPINE: Showed fairly good range of motion. He bent forward at the waist to about 80 degrees. He had good lateral motion. He stopped a supine straight leg raising at about 35-40 degrees bilaterally stating that it was tight in the back of his leg. (T. 154).

The Court notes that the ALJ devoted an entire paragraph of the decision to Dr. Amatucci's examination. (T. 25-26). However, the ALJ paraphrased Dr. Amatucci's report as follows: "[e]xamination of the lumbosacral spine showed fairly good range of motion; the claimant was able to bend forward at the waist about 80 degrees and had good lateral motion". (T. 25). The ALJ curiously omitted the last sentence of Dr. Amatucci's assessment of plaintiff's lumbar spine from the decision.

Upon a review of the record, the Court finds that the ALJ's determination is not supported by substantial evidence. The ALJ improperly disregarded portions of the record that support plaintiff's claim that he met Listing § 1.04A. Specifically, the ALJ failed to consider treatment records and opinions from plaintiff's treating physicians that provide evidence that plaintiff suffered from limitation of motion, sensory or reflex loss and positive straight leg raising. The ALJ must consider the entire record in accordance with his duty under 20 C.F.R. § 404.1520(3). *Sutherland v. Barnhart*, 322 F.Supp.2d 282, 289 (E.D.N.Y. 2004). It is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the plaintiff's claims. *Id*. (citing *Lopez v.*

*Sec'y of Dept. of Health and Human Servs.*, 728 F.2d 148, 150-51 (2d Cir.1984) ("We have remanded cases when it appears that the ALJ has failed to consider relevant and probative evidence which is available to him.")).  Moreover, the opinions of plaintiff's treating physicians, which were supported by objective medical evidence, should have been afforded controlling weight.  *Muntz*, 540 F.Supp.2d at 421.  Accordingly, the Court finds that there is clear evidence, not recited by the ALJ, that supports the finding that plaintiff met Listing § 1.04A.  *See Pitcher*, 2009 WL 890671, at *12.

**B.     Remand for Calculation of Benefits**

Under the Act, a court "shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing".  42 U.S.C. § 405(g) (fourth sentence).  Where the Court has no apparent basis to conclude that a more complete record might support the Commissioner's decision, the Court may opt simply to remand for a calculation of benefits.  *Rosa*, 168 F.3d at 83.  Where the record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose, a remand for calculation of benefits is appropriate.  *Carroll v. Sec'y of Health and Human Servs.,* 705 F.2d 638, 644 (2d Cir. 1983) (if the Secretary's decision is not supported by substantial evidence, a remand for further hearing is improper unless the Secretary shows "good cause" for lack of evidentiary support for his conclusions); *Muntz*, 540 F.Supp.2d at 421 (remanding for benefits where the plaintiff met Listing § 1.04).

In this matter, the record provides substantial evidence that plaintiff's impairments satisfied Listing § 1.04A of Appendix 1.  Indeed, in the Commissioner's brief in opposition,

defendant failed to cite to any portion of the record that contradicts that conclusion and fails to establish that the ALJ's decision is supported by substantial evidence. The ALJ clearly failed to consider the entire record in determining that plaintiff did not meet Listing § 1.04A. Because the record provides proof of disability, a new hearing would serve no useful purpose. Therefore, the Court reverses and remands solely for the calculation and payment of benefits. *See Parker v. Harris*, 626 F.2d 225, 241 (2d Cir. 1980).[5]

## IV.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner solely for the calculation and payment of benefits; and it is further

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Date:  August 5, 2009

Norman A. Mordue
Chief United States District Court Judge

---

[5] As the record contains proof that plaintiff is disabled sufficient to warrant a remand for calculation of benefits, a discussion of plaintiff's remaining arguments in support of remand is unnecessary.